In the Matter of NIAGARA MOHAWK POWER CORPORATION, Appellant-Respondent, v. BOARD OF ASSESSORS OF THE VILLAGE OF GLEN PARK et al., Respondents-Appellants.

Fourth Department, April 4, 1963.

*Dunk, Conboy, McKay & Bachman* (*Frederic S. Kendall* of counsel), for appellant-respondent.

*Clarence F. Giles, Jr.,* and *Clarence F. Giles* for respondents-appellants.

*Per Curiam.* This is a certiorari proceeding to review assessments of real property owned by the appellant Niagara Mohawk Power Corporation in the Village of Glen Park, New York. The question involved is whether the property, which is located on the Black River, has value as a potential water power site for the production of electrical power. The evidence is conflicting, the assessors' expert having testified that it is feasible to establish a plant for such production and because of that that the value of the property was $600,000. The expert for Niagara testified along engineering lines and not particularly as a real estate expert. He gave his opinion that the operation of a water power plant on the site would be economically unsound *for Niagara* and that the property had no value *to Niagara* as a power site. Two real estate experts produced by Niagara testified that the value of the dry land in question, without attributing any value to the land in the bed of the river and its water power potential, was $8,000.

There was received in evidence over the objection of Niagara a statement which Niagara had prepared and filed with the Public Service Commission showing that Niagara carried the property on its books as of the close of the calendar year 1958 at a cost of $432,749 under the heading " Glen Park Hydro

Development ''. Niagara's position in relation to this exhibit was that it had acquired this and other properties in 1953 from another power company as a part of a bulk deal at a total price of $8,500,000 and that the portion of the cost which the company had allocated to this property was $432,749. The company's experts testified that the original of the exhibit was filed as a statement of property owned by Niagara, but that the Glen Park site was not used for rate-making purposes and therefore should not be considered as a true statement of value or binding in any way on Niagara. It is urged that this figure was simply the amount which Niagara had allocated as the book cost of this property.

It is claimed that *People ex rel. Lehigh Valley Ry. Co.* v. *Burke* (247 N. Y. 227) is authority for the position taken by Niagara. An examination of the opinion in the *Lehigh Valley* case discloses that the court held that a similar statement which had been filed with the Interstate Commerce Commission by the Lehigh Valley Railway was not inadmissible, but its evidentiary value was impaired because of the fact that the cost or value placed upon the property was not considered as part of its rate-making basis or structure. For a further discussion of this principle see *Matter of City of New York* (*Maxwell*) (15 A D 2d 153, 163). However, the present case differs in several respects from the *Lehigh Valley* case. Further, if the $432,749 valuation should be considered at all, and we believe that it has evidentiary value, it should be analyzed in the light of the fact that Niagara was interested in allocating as much of the total $8,500,000 as possible to rate basis properties because Niagara would receive a greater benefit from a rate basis viewpoint had this property been valued at a low rather than a high cost. Therefore the lower the amount that could fairly be allocated to the property in question, the greater the benefit to the company. Accordingly, it is somewhat inconsistent for Niagara to argue that it allocated too high a cost to this property.

Niagara also claims that certain proper deductions from the amount of $432,749 would leave the correct cost of the portion of the property in Glen Park at $248,062.75. There is no question that a small percentage of the property included in the cost statement lies outside the Village of Glen Park. However, it is difficult to understand why the other deductions were not made before the statement was filed if they were proper. Furthermore, the attempt to explain the deductions was neither clear nor convincing.

Our chief difficulty arises from the fact that the Official Referee who determined the case based his findings of value solely and

exclusively on the figure of $432,749 contained in Niagara's report to the Public Service Commission, which he found to be the actual value of the property. After that he applied the stipulated formula to arrive at an assessed valuation. We believe, as we have said, that the figure submitted to the Public Service Commission had some evidentiary value, but we cannot hold that assessed value should have been determined solely from the Public Service Commission record. Other evidence, such as the $600,000 value placed upon the property by the expert for the town, should have been considered.

The expert testimony for Niagara that the property had no value as a power site was not persuasive. At times it was inconsistent and contradictory. Furthermore, as we have said, it was based on the operating policy of that corporation itself, without outside consideration as to the value the property might have to another. Furthermore, in analyzing this testimony it should be borne in mind that the company had paid taxes on the property up to and including the year 1958, although the 1958 tax was paid under protest. There was little, if any, evidence to the effect that Niagara had tried to dispose of the property.

Evaluating all of the testimony in the case we find that the record supplies a basis for determination that the true value of the property is $500,000. Starting with that figure we deduct the percentage that lies outside of the village and are left with a valuation of $354,500. Then, in turn, applying the village's regular assessment ratio of 76% we find that a proper assessment for this property should be $269,420.

The determination should be modified accordingly and as so modified affirmed.

WILLIAMS, P. J., BASTOW, HALPERN, McCLUSKY and HENRY, JJ., concur.

Order unanimously modified on the law and facts in accordance with the opinion and as modified affirmed, without costs of these appeals to any party.